**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BALDELLI, ) | CASE NO: 4:10-cv-286 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | **AND ORDER** |

Plaintiff, Sylvia Baldelli, challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), denying Plaintiff's application for a Period of Disability ("POD") and/or Disability Insurance Benefits ("DIB") under Title II and Part A of XVIII of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1395c *et seq.* (The "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

1

# I. PROCEDURAL HISTORY

On November 8, 2006, Plaintiff filed an application for a POD and DIB benefits, alleging a disability onset date of March 1, 2006. On February 15, 2007, her claim was denied and, on March 29, 2007, was denied again upon reconsideration. On June 1, 2007, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"). On February 23, 2009, Plaintiff attended her hearing before an ALJ. A vocational expert ("VE") and Plaintiff's Counsel were also present. On May 4, 2009, the ALJ found Plaintiff not disabled. On May 18, 2009, Plaintiff sought review of the ALJ's Decision by the Appeals Council. On January 13, 2010, the Appeals Council declined to review the ALJ's Decision. Plaintiff then timely filed her Complaint in federal court. (Doc. No. 1.)

Plaintiff asserts three assignments of error in support of her request for remand: (1) the ALJ failed to adequately develop the record; (2) the ALJ improperly found Plaintiff's subjective statements regarding the extent and severity of her symptoms and limitations incredible; and (3) the ALJ's residual functional capacity ("RFC") determination that Plaintiff can perform light work is unsupported by substantial evidence.

# II. EVIDENCE

## A. Personal and Vocational Evidence

Plaintiff was born on February 12, 1955. (Tr. 97.) She was fifty-five years old at the time of the administrative hearing and at the time of ALJ's Decision. (Tr. 7, 20, 97.) Plaintiff graduated from high school. (Tr. 24-25.) From 2002 until March 2006, she

worked as a medical records clerk. (Tr. 108.) Prior to that, from 1984 to 2001, she worked as a cashier and stocker in a grocery store. (Tr. 108.)

### B. Medical Evidence

In early August 2000, Plaintiff suffered heart failure and underwent triple valve heart surgery. (Tr. 273.) Plaintiff received a pacemaker implant. (Tr. 273.) Follow-up evaluations indicated that Plaintiff was recovering well from the surgery, and she was eventually cleared to drive. (Tr. 269, 273.)

In February 2005, Plaintiff had her gallbladder removed. (Tr. 165-66, 223-26.) The procedure was well tolerated. (Tr. 225.) In March 2005, however, Plaintiff suffered some abdominal pain and anemia caused by bleeding at the site of the gallbladder surgery. (Tr. 174.) Various examining physicians noted that Plaintiff also suffered acute renal failure and cirrhosis of the liver not caused by alcohol consumption. (Tr. 170-91.) Plaintiff's abdominal bleeding was corrected, and Plaintiff's treating primary-care physician, Thomas J. Traikoff, D.O., deemed Plaintiff's hospital stay "fairly unremarkable." (Tr. 174.)

In August 2006, Plaintiff had her pacemaker replaced. (Tr. 323-24.) At a follow-up a month later at the Pacemaker Clinic, an examining physician noted that Plaintiff's incision was "well-healed" and that Plaintiff had "no cardiovascular complaints." (Tr. 289-90.)

In November 2006, Plaintiff visited her treating cardiologist, Ronald Mikolich, M.D., for another follow-up regarding her replacement pacemaker. (Tr. 335.) Plaintiff reported discomfort at the incision site and said her replacement pacemaker "doesn't feel the same" as her previous pacemaker. (Tr. 335.) She denied any dizziness,

lightheadedness, or fainting, but did report fatigue and shortness of breath with exertion. (Tr. 335.) Her pacemaker function was normal. (Tr. 335.) She was advised to begin a weight reduction diet to lose 10-20 pounds, see her family doctor for primary care, and return in six months for another pacemaker analysis. (Tr. 335.)

In December 2006, the Rehabilitation Services Commission of the Bureau of Disability Determination asked Plaintiff's treating cardiologist, Dr. Mikolich, for his opinions of Plaintiff's conditions and the extent to which they limited her. (Tr. 331.) Dr. Mikolich responded, "see attached medical records." (Tr. 333.)

In February 2007, state agency physician Lynne Torello, M.D., reviewed Plaintiff's medical file and assessed that Plaintiff could lift and/or carry and push and/or pull up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme heat or cold; should avoid even moderate exposure to fumes, odors, dusts, gases, and other poor ventilation conditions; and should avoid all hazards, such as machinery and heights. (Tr. 344-51.) Dr. Torello further noted that Plaintiff's "allegations are greatly in excess of what her physicians describe and are not very credible." (Tr. 349.)

In March 2007, state agency physician Charles Derrow, M.D., reviewed Plaintiff's file and assessed the same restrictions as Dr. Torello, noting that his RFC assessment has been completed only to correct technical errors made in Dr. Torello's report, and that he did not intend to supercede or significantly change Dr. Torello's RFC assessment. (Tr. 352-59.)

4

In June 2008, Plaintiff visited her new treating cardiologist, Dr. Julius A. Kato, for a check-up. (Tr. 367; *see* Tr. 41.) Exam findings at the check-up were normal and Plaintiff reported no chest pain or shortness of breath. (Tr. 367.)

In September 2008, Plaintiff saw Dr. Kato again for another check-up and reported no problems. (Tr. 372.) Dr. Kato reported that Plaintiff "appear[ed] clinically stable at this time," and there were no irregular exam findings. (Tr. 372.)

In October 2008, Plaintiff visited Dr. Traikoff. (Tr. 376.) Dr. Traikoff reported that Plaintiff was "managing fairly well, tolerating medications well." (Tr. 376.) Dr. Traikoff further reported that Plaintiff denied fatigue, chest pain, dyspnea (i.e., shortness of breath) on exertion, and palpitations. (Tr. 376.) He did, however, note a low potassium level, and decided to reduce her diuretic to once per day. In conclusion, Dr. Traikoff noted that Plaintiff's "[s]ystems review [was] otherwise very stable." (Tr. 376.)

### C. Hearing Testimony

#### 1. Plaintiff's State Agency Reports

In December 2006, Plaintiff completed a Symptoms Report and a Function Report in relation to her application for disability benefits and stated the following. She experienced level nine fatigue (on a scale of one to ten) five days a week, and level seven fatigue the other two days of the week. (Tr. 126.) She experienced constant level-ten weakness seven days a week. (Tr. 126.) She experienced level one shortness of breath four days a week, and level nine shortness of breath the other three days. (Tr. 127.) She bathed and dressed herself; did light housework; prepared light meals on a daily basis; took care of her husband; loaded the dishwasher; drove a car; took hour-long trips to the grocery store once a week; watched television daily; bowled;

5

talked on the telephone; went to luncheons on a daily basis; and could walk fifty feet before needing a short rest. (Tr. 129-36.)

### 2. Plaintiff's Testimony

Plaintiff testified to the following at her hearing. Since her disability onset date, Plaintiff has not had any problems with her heart that required emergency room treatment. (Tr. 28-29.) She did suffer one episode of congestive heart failure, manifested as a difficulty in breathing, after she stopped taking her medication for a few days while waiting for a new prescription to arrive. (Tr. 30.) At that time, her doctor gave her a new prescription, told her to fill it immediately, and to double her dosage. (Tr. 30.) Plaintiff did not suffer such heart problems when she was properly taking her medications. (Tr. 30-31.)

Plaintiff did not suffer mental problems. (Tr. 29.) Since the abdominal bleeding immediately after her gallbladder was removed, she had not suffered any other complications from that procedure. (Tr. 29.) She did not suffer any chest pain at the time of her hearing, but she did suffer shortness of breath after climbing steps and lifting and carrying things. (Tr. 31.) She has not been diagnosed with back or other orthopedic problems. (Tr. 32.) Her pacemaker, however, is in her abdomen and often "gets in her way." (Tr. 32.)

Plaintiff spends most of her day lying down watching the television. (Tr. 36.) She has trouble climbing only one flight of steps and either rests halfway up or sits at the top to catch her breath. (Tr. 31.) She can walk and stand only fifteen or twenty minutes before she needs to sit down and rest. (Tr. 32.) She can sit for only twenty minutes before she needs to get up. (Tr. 33.) She can lift only five pounds. (Tr. 33.)

6

Plaintiff can care for her own personal hygiene. (Tr. 34.) She can perform household chores such as the following: preparing light meals; loading the dishwasher and emptying it (so long as she does not have to place cleaned dished in high places); putting laundry in the washing machine (although she waits for her niece to put it in the dryer so she does not have to make a second trip down the stairs); and generally keeping her home clean. (Tr. 34-35.) She cannot, however, scrub her floors, run the vacuum cleaner, and make the beds. (Tr. 34-35.) She requires the help of her house cleaner and niece to do the chores that she is unable to perform. (Tr. 34, 35.)

Plaintiff feels that she cannot perform any job on a full-time basis because she becomes too tired and, therefore, needs to lay down approximately three times a day. (Tr. 40-41.)

### 3. Vocational Expert's Testimony

The VE testified to the following. Plaintiff's past job as a grocery store stock person is an unskilled, medium exertion level job. (Tr. 36-37.) Plaintiff's past job as a medical records clerk is a semi-skilled, light exertion level job. (Tr. 37.) Plaintiff's four-years as a medical records clerk was a sufficient time, and gave her sufficient training, to learn to be a medical records clerk in a typical doctor's office. (Tr. 37.) However, Plaintiff has no transferrable work skills. (Tr. 37-38.)

The ALJ posed the following hypothetical person to the VE:

Now, lets assume that we have an individual that is currently 55 years of age, has a high school education, and the work experience that you have defined and described. Let's assume that this individual is capable of light work activity . . . but no climbing or balancing, crawling or kneeling. . . . I'm going to limit her to not being able to work in an enviornoment of airborne pollutants such as dust, smoke, fumes, et cetera. Okay. And because she's on Coumadin and blood thinners of that nature, what I'm going to do is limit her

7

> further in that she should not work with sharp instruments, anything where she could potentially cut or cause injury to herself. And no unprotected heights.

(Tr. 37-38.)  The ALJ then asked whether such a person could return to a medical records clerk position.  (Tr. 38.)  The VE answered that such an individual could return to such a medical records clerk position.  (Tr. 38.)

The ALJ then asked the VE whether there were additional light jobs that such an individual could perform.  (Tr. 39.)  The VE answered that such a person could perform light cashier jobs, for which there were approximately one million positions in the national economy.  (Tr. 39.)  The VE also testified that such a person could be a document preparer, for which there were approximately 300,000 positions in the national economy.  (Tr. 39.)  The VE finally testified that such an individual could work as a bench assembler, assembling various small products.  (Tr. 39.)  The VE testified that there were approximately 600,000 bench assembler jobs in the national economy.  (Tr. 39-40.)

The ALJ asked the VE whether a person with Plaintiff's characteristics who was absent from the workplace on an irregular or random basis three or more times per month for several months would be able to do any of the aforementioned jobs in the national economy.  (Tr. 40.)  The VE testified that such an individual would not be able to perform the aforementioned jobs.  (Tr. 40.)

The ALJ then asked the VE whether such a hypothetical person who was off task for ten to fifteen percent of the workday, excluding the usually scheduled breaks and lunch periods, for an extended period of time could perform any jobs in the national economy.  (Tr. 40.)  The VE answered that such a person could not perform any jobs in

8

the national economy. (Tr. 40.)

The ALJ finally asked the VE whether the VE's testimony was consistent with the information in the Dictionary of Occupational Titles ("DOT") and other relevant vocational sources. (Tr. 42.) The VE answered that his testimony was consistent with the DOT and other vocational sources. (Tr. 42.)

#### 4. Plaintiff's Counsel's Testimony

The ALJ asked Plaintiff's Counsel at the hearing whether he had any objections to the record evidence and whether he wanted to add any further evidence to the record. (Tr. 22-23.) Plaintiff's Counsel responded that he had no objections and no further evidence to add to the record. (Tr. 22-23.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that

9

she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 1, 2006, the alleged onset date.

3. The claimant has the following severe impairments: congenital heart disease with the residual effects of a triple valve surgery.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

>      impairments.
>
> 5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except that she must avoid climbing, balancing, crawling, and kneeling, must avoid concentrated exposure to fumes, odors, dusts, gases, and environments with poor ventilation, must avoid work with sharp instruments or objects that could cut or cause injury, and must avoid unprotected heights and exposure to dangerous machinery.
>
> 6.   The claimant is capable of performing past relevant work as a medical records clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7.   The claimant has not been under a disability . . . from March 1, 2006 through the date of this decision.

(Tr. 14-19.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, and whether it was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations nor weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.

### B. The ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record because Plaintiff's Counsel before the Social Security Administration did not obtain any treating source statements, the ALJ did not order Plaintiff to undergo consultative examinations, and the ALJ did not call a medical expert ("ME") to testify.  (Pl.'s Br. at 9.)  For the reasons set forth below, the Court disagrees.

An ALJ has a duty to ensure that a reasonable record has been developed to provide a claimant with a full and fair hearing.  See *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).  The claimant, however, has the ultimate burden of providing a complete record, which is defined as evidence complete and detailed enough to enable the Commissioner to make a disability determination.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); 20 C.F.R. 404.1512(c).  An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or

12

mental examinations or tests.") (emphasis added).  The ALJ is not required to refer a claimant for consultative examinations unless the record establishes that such examinations are necessary to enable the ALJ to make his decision.  *Landsaw*, 803 F.2d at 214.  Moreover, an ALJ is not required to call an ME to testify at the hearing, but *may* do so at his discretion.  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009); 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) ("Administrative law judges *may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s).") (emphasis added).

  Plaintiff's argument that the ALJ erroneously failed to obtain treating source statements from her treating physicians is not entirely accurate.  The Rehabilitation Services Commission asked Plaintiff's treating cardiologist, Dr. Mikolich, for his opinions of Plaintiff's conditions and the extent to which they limited her.  Dr. Mikolich apparently believed that Plaintiff's medical records sufficiently described his opinions, as he responded, "see attached medical records."  Because Plaintiff based her subjective statements of symptoms and limitations on her underlying heart condition, it was reasonable for the ALJ to rely on her treating cardiologist's opinions.  Because Plaintiff's treating cardiologist indicated that Plaintiff's medical records sufficiently described his opinions, it was reasonable for the ALJ to be satisfied with those medical records as evidence of his opinions.

  The Sixth Circuit has found a record fully developed when the claimant was the only one who testified at the hearing before the ALJ and the record contained reports from only two psychologists and a psychiatrist.  *Simpson*, 344 F. App'x at 189 (citing *Allison v. Apfel*, 229 F.3d 1150 (Table), No. 99-4090, 2000 WL 1276950, at *5 (6th Cir.

Aug. 30, 2000)).  The Sixth Circuit has also found a record fully developed when the record contained only the claimant's extensive medical history.  *Id.* (citing *Williams v. Callahan*, 149 F.3d 1185 (Table), No. 97-3601, 1998 WL 344073 (6th Cir. May 26, 1998)).  Here, Plaintiff's record contains her entire relevant medical history, testimony as to her daily activities, testimony from a VE, and reports from state agency reviewing physicians.  Plaintiff does not explain how this breadth and depth of evidence was unreliable or otherwise insufficient for the ALJ to make his Decision, but argues only that there could have been other evidence added to the record.  The mere existence of other possible evidence, however, is not grounds for finding an undeveloped record.  *See id.* (citing *Kendrick v. Shalala*, 998 F.2d 455, 456-58 (7th Cir. 1993)) (noting that the record is never entirely complete, in a literal sense, and that such a requirement would paralyze the process of determining disability and undermine all of the objectives of a simplified process for determining disability).  Moreover, the ALJ asked Plaintiff's Counsel at the hearing whether he had any objections to the record evidence and whether he wanted to add any further evidence to the record.  Plaintiff's Counsel responded that he had no objections and no further evidence to add.

Absent Plaintiff's explanation of how the evidence the ALJ did consider was unreliable or otherwise insufficient, the Court defers to the ALJ's determinations that additional consultative examinations and medical expert testimony were not necessary to make his Decision.  *Cf. id.* ( finding that the ALJ did not err in failing to call a medical expert when the claimant's record consisted of the claimant's extensive medical history, testimony as to her daily activities, testimony from a vocational expert, reports from the claimant's treating physicians, and reports from state agency doctors).  In light of the

14

breadth and depth of Plaintiff's record evidence, the Court finds that the ALJ adequately developed the record.

### C. The ALJ's Credibility Assessment of Plaintiff's Subjective Statements

Plaintiff argues that the ALJ improperly determined that Plaintiff's subjective statements regarding the extent and severity of her symptoms and limitations were incredible for four reasons:  (1) Plaintiff's reported daily activities were "minor" and, therefore, should not have been accorded significant weight and found inconsistent with her subjective statements; (2) the ALJ gave improper weight to Plaintiff's treating physicians' reports that indicated that Plaintiff had been "doing well" and was "stable"; (3) Plaintiff's medical records after her pacemaker replacement were consistent with her subjective statements and, therefore, gave her subjective statements more weight; and (4) the ALJ did not explain how Plaintiff's daily activities and treatment record were inconsistent with her subjective statements.  For the following reasons, the Court finds that Plaintiff's assignments of error lack merit, and that the ALJ's credibility assessment of Plaintiff's subjective statements was adequate.

Credibility determinations regarding a claimant's subjective statements rest with the ALJ.  *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  A claimant's subjective statements, alone, are not conclusive evidence of disability.  *Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992).  In determining the credibility of a claimant's subjective statements, the adjudicator must consider the *entire* case record, including the objective medical evidence, the claimant's statements about symptoms, statements and other information

15

provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  S.S.R. 96-7p, at 1.  An ALJ may consider a claimant's daily activities when evaluating the claimant's subjective statements.  *See* id. at *3; *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993).

Plaintiff's arguments that her reported daily activities and treating physicians' opinions were not weighty enough to discredit her subjective statements miss the point: the ALJ was required to consider the *entire* case record in his credibility assessment, s*ee* S.S.R. 96-7p, at 1, and the ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  The ALJ considered the entire case record in his credibility assessment, including not just Plaintiff's reported daily activities and treating physicians' opinions, but also Plaintiff's medications and the opinions of a state agency reviewing physician.  (Tr. 15-17.)  All of this evidence was relevant and, considered together, supported the ALJ's Decision.

When an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Here, the ALJ did so. The ALJ clearly explained that Plaintiff's reported daily activities were inconsistent with her subjective statements of debilitating symptoms, and that they indicated that Plaintiff was capable of light work.  (Tr. 17.)  The ALJ explained that Plaintiff's medications proved effective in controlling her symptoms, and that Plaintiff did not testify that her medications caused debilitating side effects.  (Tr. 17-18.)  The ALJ explained that Plaintiff's lack of treatment history (including the facts that she underwent

16

no further surgeries after her pacemaker replacement, that she was not hospitalized or otherwise treated for her heart condition after the replacement, that she did not visit a cardiologist after September 2008, and that she reported to her primary treating physician in January 2009 that she was not experiencing dizziness, chest pain, dyspnea on exertion (i.e., shortness of breath), or palpitations) was inconsistent with her subjective statements of debilitating symptoms.  (Tr. 18.)  And the ALJ explained that no treating or examining medical source provided a medical source statement indicating that Plaintiff suffered symptoms and limitations that would preclude her from performing light work.  (Tr. 18.)  The ALJ concluded that, "after reviewing the clinical and objective findings in addition to the factors considered in SSR 96-7p . . . the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms but the statements concerning the intensity, duration, and limiting effects of the claimant's symptoms are not entirely credible and are inconsistent with the totality of the evidence."  (Tr. 18.)

Plaintiff argues that it remains unclear *how* the ALJ concluded that Plaintiff could perform light work.  (Pl.'s Reply Br. 2-3.)  Plaintiff argues that the ALJ failed to explain specifically how Plaintiff's daily activities were inconsistent with her subjective statements when Plaintiff relied on her niece and a housekeeper to help her with the household chores (Pl.'s Br. 6); and that the ALJ failed to explain specifically how Plaintiff's lack of surgical intervention and emergency treatment after her pacemaker replacement lent to the conclusion that Plaintiff could perform light work (Pl.'s Reply Br. 2).  The Court disagrees.  The ALJ explained that his determination of Plaintiff's RFC was confirmed by the opinions of a state agency physician who reviewed Plaintiff's

17

record, and the ALJ explained that he found the state agency physician's opinions consistent with the record evidence.  (Tr. 18.)

Although the ALJ could have articulated more clearly the logical inferences drawn from the evidence that lent to the conclusion that Plaintiff's subjective statements were incredible, the ALJ's explanation is sufficiently clear for subsequent reviewers to understand why he gave Plaintiff's subjective statements less weight.  *See* S.S.R. 96-7p, at 4.  Remand is not necessary.  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005), *quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")  Accordingly, the Court finds that the ALJ's credibility assessment of Plaintiff's subjective statements was adequate.

**D.     The ALJ's RFC Assessment**

Plaintiff argues that, absent testimony of an ME and functional capacity assessments from treating sources, the record lacks substantial evidence to support the ALJ's RFC determination that Plaintiff is capable of performing light work.  Plaintiff cites no legal authority to support this argument, and the Court is not persuaded.  An RFC assessment is based on all of the relevant evidence in the case record.  20 C.F.R. § 404.1545(a)(1).  The ALJ adequately developed the record, his Decision was based on the record as a whole, and substantial evidence supports his RFC assessment.  For example, Plaintiff's treating primary care physician, Dr. Traikoff, reported that Plaintiff denied fatigue, chest pain, dyspnea (i.e., shortness of breath) on exertion, and palpitations.  And the state agency reviewing physician found Plaintiff capable of light

work, and that Plaintiff's allegations of disabling symptoms were not credible because they were greatly in excess of what her physicians described.  There was more than a scintilla of evidence for a reasonable mind to accept the ALJ's RFC assessment.  Therefore, this assignment of error lacks merit.

### E.	Substantial Evidence Supports the ALJ's Decision

Substantial evidence supporting an ALJ's decision may be produced through reliance on the testimony of a VE in response to a hypothetical question if the question accurately portrays the claimant's impairments.  *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).  Here, a VE testified that, based on the ALJ's hypothetical question that accurately portrayed Plaintiff's impairments, Plaintiff could perform her past relevant work as a medical records clerk.  The VE also testified that Plaintiff could perform three other types of light exertion-level jobs that existed in significant numbers in the national economy.  Therefore, the Court finds that substantial evidence supports the ALJ's Decision that Plaintiff is not disabled.

### VI.	CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED, and judgment is entered in favor of the Commissioner.

IT IS SO ORDERED.

                                    *s/ Nancy A. Vecchiarelli*
                                    Nancy A. Vecchiarelli
                                    U.S. Magistrate Judge

Date:  November 1, 2010